IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
         Plaintiff,

                vs.                Case No. 15-10154-04-JTM

ARMANDO ANGELES,
         Defendant.

MEMORANDUM AND ORDER

      Defendant Armando Angeles has moved to suppress evidence obtained after his vehicle was stopped by the Kansas Highway Patrol on July 27, 2014. The Indictment in the present action charges Angeles with unlawful possession with intent to distribute cocaine, and (along with co-defendant Gilberto Sanchez) unlawful use of a telephone to facilitate the distribution of cocaine (in violation, respectively, of 18 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 843(b)). The court heard evidence relating to Angeles's motion on July 25, 2016, and for the reasons stated in this Order, denies the request to suppress.

      Two witnesses appeared at the hearing, and the court finds their testimony generally credible. In addition, the government has introduced two dashboard video recordings of the stop, taken from two different Highway Patrol vehicles. Collectively, the evidence demonstrates that the Highway Patrol stopped Angeles's vehicle on the Kansas Turnpike as it returned to Topeka from Wichita at the direction of officers

conducting electronic surveillance of ongoing drug trafficking operations, pursuant to a court-approved wiretap. In order to obtain an additional and independent ground for the stop, and to avoid divulging the electronic surveillance, the Highway Patrol stopped the defendant's vehicle only after it appeared to commit a lane violation prohibited by K.S.A. § 8-1522.

Sedgwick County Sheriff's Office Detective Matthew Lynch helped coordinate the electronic surveillance of Sanchez and Angeles. A dozen text messages and telephone calls between the defendants, which began two days before the traffic stop, establish the likelihood that Sanchez was looking to transfer "those books," the defendant using a code for narcotics. Sanchez later indicated that the transaction would include "bricks" (pounds of marijuana) and "onions" (an ounce of some other narcotics). Angeles, who lived in Topeka, responded that he was busy at work, but "I see if I come down tomorrow." Sanchez indicated to Angeles that the drugs were of very good quality by texting Angeles, "They fire." After further conversations on July 26, in which Angeles indicated he was unable to meet that day with Sanchez, he texted "I come down tomorrow, got my kids."

Sanchez spoke with Angeles again on the morning of July 27, indicating the general price and quantity of drugs to be exchanged, and asking to meet at the parking lot of the Old Chicago restaurant in Wichita. Angeles indicated that he had his children with him, and asked that the transaction occur quickly. After further calls during the afternoon, the two agreed to meet around 4:00 p.m.

Detective Lynch followed Sanchez to a house in northeast Wichita, apparently to visit his supplier, and then to the Old Chicago in east Wichita. Lynch positioned his vehicle between the proposed meeting place and the entrance to the turnpike. After the meeting, Lynch followed Angeles's green Ford Expedition as it drove east on Kellogg and returned to the turnpike heading in the direction of Topeka. DEA officers then directed officers of the Kansas Highway Patrol to stop the Expedition before it reached Topeka. If possible, the Patrol should find a valid independent reason to stop the car. If no infraction was seen, the car would be stopped before it reached Topeka, based on the DEA's conclusion that its investigation had established probable cause to believe the vehicle contained contraband.

Trooper Sage Hill conducted the stop, after observing the passenger tires of the Expedition twice cross the white "fog line" of the highway. Hill's testimony was credible. In addition, although the video recording does not clearly show the traffic infraction because the camera overexposed the visual images due to sunlight during the relevant moments, the recording is still relevant for two reasons. First, the audible recording corroborates Hill's testimony. The recording shows that, after stopping the vehicle, Hill told Angeles of the lane violation and asked whether he was sleepy or had been using alcohol. The defendant denies the being sleepy or drunk – but not the fact of having crossed over the fog line. Second, the video portion of the recording indicates that the sun was bright and there was no significant wind. There was no independent condition, in other words, which would render it impracticable for the defendant to maintain a single lane of traffic.

Hill issued a warning ticket, told Angeles he was free to go, and asked if he could ask a few more questions. Angeles agreed and Hill told Angeles that the route was frequently used by persons carrying illegal items. Angeles denying carrying anything illegal, and Hill asked if he could check the vehicle to make sure. Inside the Expedition, officers found 80 grams of cocaine and 440 grams of marijuana.

Under the "collective knowledge doctrine," an officer otherwise unaware of specific facts indicating criminal activity may still conduct a lawful traffic stop and search of a vehicle when acting on instructions delivered by another officer who does have such probable cause. *United States v. Bernard*, 680 F.3d 1206, 1210 (10th Cir. 2012). *See United States v. Chavez*, 534 F.3d 1338, 1347 (10th Cir. 2008) ("a police officer may rely on the instructions of the DEA (or other law enforcement agencies) in stopping a car, even if that officer himself or herself is not privy to all the facts amounting to probable cause").

The doctrine is applicable here. The facts available to the DEA task force indicated that Sanchez and Angeles planned to meet for the purpose of trading in narcotics. The defendants discussed the price and amount of the sale, and in the course of well over a dozen communications, discussed when and how to meet. The seller, Sanchez, was observed before the scheduled meeting, traveling to what appeared to be the house of a supplier in northeast Wichita. He then travelled to the appointed rendezvous, as did the defendant, who had travelled down to Wichita from Topeka. Angeles's vehicle left the meeting and immediately got back on the turnpike to return to Topeka. As a result of all of the intercepted communications, the officer directing the

4

stop had probable cause to believe that Angeles's vehicle held the narcotics which was the subject of the sale.

Independent of this probable cause, Trooper Hill validly stopped the vehicle for an observed traffic infraction. K.S.A. § 8-1522(a) provides that a motorist on a roadway with two or more clearly marked lanes shall drive "as nearly as practicable within a single lane and [not move] from such lane until the driver has first ascertained that such movement can be made with safety." The statute creates two separate rules of the road. It is violated if a motorist fails to maintain a single lane where practicable *or* changes lanes unsafely. *State v. Marx*, 289 Kan. 657, 215 P.3d 601 (2009). The first provision is not a strict liability offense; for example it may be impracticable to maintain a single lane because of weather conditions or because of obstacles in the roadway. Because the statute only mandates compliance "as nearly as practicable," a violation requires more than an incidental and minimal lane breach. *Id*. at 674. As noted earlier, there is no evidence of road or weather conditions which rendered the maintenance of a single lane of traffic. Trooper Hill had a reasonable suspicion that the defendant's vehicle violated § 8-1522.

The defendant's vehicle was validly stopped, and the evidence supports a determination that the subsequent search was consensual. During a routine traffic stop, an officer may request a driver's license and registration, run requisite computer checks, and issue citations or warnings. The officer may also inquire about travel plans and ask about matters unrelated to the stop. *See United States v. Pettit*, 785 F.3d 1374 (10th Cir. 2015) . Continued detention is lawful if the encounter becomes consensual or if, during

5

the initial stop, the officer develops a reasonable suspicion that the person is engaged in criminal activity. *Id*. at 1379.

A traffic stop may become a consensual encounter if the officer returns the driver's license and registration and proceeds to ask questions "without further constraining the driver by an overbearing show of authority." *United States v. Bradford,* 423 F.3d 1149, 1158 (10th Cir. 2005). Under this standard, "an officer is not required to inform a suspect that she does not have to respond to questioning or that she is free to leave." *Id.* But a "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled may suggest that the detention has not ended." *United States v. Anderson,* 114 F.3d 1059, 1064 (10th Cir. 1997) (internal quotation mark omitted). *United States v. Velazquez*, 349 F. App'x 339, 342 (10th Cir. 2009). A valid consent to search may arise where there is clear and positive evidence of free consent, which was given without coercion. *See United States v. Salas*, 756 F.3d 1196, 1202-03 (10th Cir. 2014).

The court has reviewed the testimony and video recordings of the stop, and finds that Trooper Hill obtained a valid consent for continued questioning and for the search of the vehicle. There was no express or implied use of coercive force. Trooper Hill did not draw his weapon or emphasize its presence. Hill spoke with Angeles through the passenger window, maintaining his distance and speaking in a conversational tone. The recording indicates that Angeles understood Hill's questions and responded without reluctance or hesitation. Based on all of the facts of the case, the court concludes that,

even in the absence of the information obtained from the wiretaps and surveillance of apparent exchange at the Old Chicago, Trooper Hill searched the defendant's vehicle based on a valid consent.

IT IS ACCORDINGLY ORDERED this 29th day of July, 2016, that the defendant's Motion to Suppress and Amended Motion to Suppress (Dkt. 45, 47) are hereby denied.

        ___s/ J. Thomas Marten_____
        J. THOMAS MARTEN, JUDGE